UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

HECTOR ANDRADE,

                            Plaintiff,              **REPORT AND**

    -against-                           **RECOMMENDATION**
                                             15-CV-4212 (ADS)(SIL)

NEW YORK PANINI, LLC, LA BOTTEGA
OF HUNTINGTON, LLC, and JOSEPH QUIRKE,

                            Defendants.

-----------------------------------------------------------------X

**LOCKE, Magistrate Judge:**

       Presently before the Court, on referral from the Honorable Arthur D. Spatt for Report and Recommendation, is Plaintiff Hector Andrade's ("Plaintiff" or "Andrade") motion for a default judgment. *See* Docket Entry ("DE") [15]. By way of Complaint filed July 17, 2015, Andrade commenced this wage and hour action against Defendants Joseph Quirke ("Quirke"), New York Panini, LLC, and La Bottega of Huntington, LLC (collectively "Defendants"), alleging failures to compensate him for overtime hours worked in violation of both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 *et seq*. *See* DE [1]. After Defendants failed to answer or otherwise respond, the Clerk of the Court entered default against them on November 2, 2015. *See* DE [12]. On March 31, 2016, Plaintiff filed the instant motion for a default judgment. *See* DE [14]. Judge Spatt referred the motion to this Court for a Report and Recommendation as to whether a default judgment should be granted and, if so, to determine the appropriate amount of damages. *See* DE [18].

For the reasons set forth herein, the Court respectfully recommends that Plaintiff's motion for a default judgment be granted as to the unpaid overtime claim under the FLSA and NYLL, and denied as to the minimum wage and the spread of hours claims under the NYLL. The Court further recommends that damages, totaling $91,844.58, be awarded as follows: (i) $42,729.39 in compensatory damages, (ii) $33,368.43 in liquidated damages, and (iii) $15,746.76 in pre-judgment interest, with interest accruing at a daily rate of $10.54 until judgment is entered. Finally, the Court recommends that Plaintiff be granted leave to move for attorneys' fees and costs.

## I.     Background

### A.  <u>Relevant Facts</u>

The following facts are taken from Plaintiff's Complaint ("Compl."), DE [1]; the Declaration of Hector Andrade ("Decl."), DE [16-2]; and accompanying exhibits. All facts are presumed true.

Andrade is a resident of Huntington, New York, and was employed by Defendants as a "bus boy/food runner" from approximately June 8, 2009 until on or about May 12, 2015. Compl. ¶¶ 5, 13; Decl.¶¶ 4-6. Defendants New York Panini, LLC, and La Bottega of Huntington, LLC, (collectively "Corporate Defendants") own and operate a restaurant located at 9 Wall Street in Huntington, New York. Compl. ¶¶ 6-9. Defendant Quirke is an officer and director of both Corporate Defendants and participated in their day-to-day management, including determining employees' salaries, making hiring decisions, and creating, implementing, and supervising the wage and hour practices and policies for Corporate Defendants' employees. *Id.* at ¶¶ 10-12; Decl. ¶ 22.

Plaintiff was an hourly employee of Defendants. Compl. ¶ 22; Decl. ¶ 10. His primary job functions included bringing food to customers and cleaning their tables when they finished eating. Compl. ¶ 13; Andrade Decl. ¶¶ 4-5. From June 8, 2009 until December 31, 2009, Andrade's daily work schedule was from 10:00 a.m. until 3:00 p.m. Decl. ¶ 6. During this time period, each month, Andrade worked the aforementioned hours seven days a week for three weeks, and, then, for one week, Plaintiff worked six days. *Id.* For the remainder of his employment, Andrade worked consistently six days a week, from 10:30 a.m. through at least 10:30 p.m. each day, with Sundays off. *Id.* at ¶ 8. Plaintiff worked these hours without any uninterrupted breaks. *Id.* at ¶ 9.

Andrade asserts that, throughout the time he was employed by Defendants, he was compensated at a straight hourly rate for all of the hours that he worked without any overtime or spread of hours compensation. *Id.* at ¶¶ 10-11. Although he received occasional tips from customers, Defendants never informed him that any tips were being credited against the applicable minimum wage. *Id.* at ¶ 11. When Andrade asked Defendant Quirke why he was not receiving overtime, Quirke responded that it was because the restaurant was classified as a small business. *Id.* at ¶ 22.

From June 8, 2009 through December 31, 2009, at the end of each week, Defendants paid Andrade entirely in cash at a rate of $3.50 per hour. *Id.* at ¶ 12. Subsequently, Defendants paid Plaintiff weekly by check for the first 35 hours that he worked and then in cash for any additional hours. *Id.* at ¶ 13-18. Although Andrade's pay increased four times during his employment, Defendants paid Andrade only at his set regular rate with no additional overtime or spread of hours compensation. *See id.* ¶¶ 13-18. From January 1, 2010 through December 31, 2012, Plaintiff's

3

hourly rate was $5.00. *Id.* at ¶ 14. This increased first to $7.50 starting January 1, 2012 and then to $8.00 per hour on January 1, 2013. *Id.* at ¶¶ 15-16. Finally, from January 1, 2014 through to the end of his employment on May 12, 2015, the Defendants paid Andrade at a rate of $9.00 per hour for all hours worked. *Id.* at ¶ 17.

### B. **Procedural History**

By way of Complaint filed on July 17, 2015, Andrade commenced this litigation against Defendants seeking relief for unpaid overtime compensation with Count 1 brought under the FLSA and Count 2 filed under the NYLL. *See* Compl. ¶¶ 33-47. There is no other cause of action alleged in the Complaint. *See id.*

Defendants failed to respond or otherwise appear, and a Certificate of Default was entered on November 2, 2015. *See* DE [12]. On March 31, 2016, Andrade moved for a default judgment. *See* Andrade Memorandum in Support ("Mem."), DE [15]. However, in that motion, Plaintiff sought not only compensation under the FLSA and NYLL for unpaid overtime, but also, compensation under the NYLL for minimum wage violations and failure to pay spread of hours compensation. *See* Mem. at 11-13; Decl. ¶ 24.

## II.   **Legal Standard**

Motions for default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure, which provides for a two-step process. *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. *See* Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party must then apply for entry of a default judgment. *Id.* Where a default occurs, the well-pleaded factual allegations set forth in a complaint concerning liability

are deemed true. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *Profi-Parikiet Sp. Zoo v. Seneca Hardwoods LLC*, No. 13-cv-4358, 2014 U.S. Dist. LEXIS 71289, at *11 (E.D.N.Y. May 23, 2014) (Report and Recommendation), *adopted by*, 2014 U.S. Dist. LEXIS 83128 (E.D.N.Y. June 18, 2014) (internal quotation omitted). Rather, the district court must determine whether the plaintiff's allegations establish liability as a matter of law. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *see also Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (holding that a plaintiff seeking a default judgment must establish that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action"). The decision whether to enter a default judgment "is entrusted to the sound judicial discretion of the court." *Allstate Ins. Co. v. Howell*, No. 09-CV-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013); *see also Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) ("The dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties.").

In the event that liability is established, the court must ascertain damages with "reasonable certainty." *Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). However, an evidentiary hearing is not required so long as there is a basis, by detailed affidavits and other documentary evidence, to substantiate the damages awarded. *See Transatlantic Marine Claims*

*Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).

III.    **Discussion**

A.      **Overtime Claim Under Fair Labor Standards Act**

Plaintiff alleges that he is owed overtime compensation pursuant to the FLSA for the period of July 17, 2012 through May 12, 2015. *See* Compl. ¶¶ 33-41; Decl. Attached Computation of Damages ("Attach. Comp. of Dams."). For the reasons set forth below, the Court recommends that Defendants be found liable with respect to this claim.

1.   Employer Status

As an initial matter, Plaintiff must establish that Defendants are employers under the FLSA and are engaged in interstate commerce. *See* 29 U.S.C. § 207; *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *13 (E.D.N.Y. June 18, 2013). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). To determine whether an individual is an "employer" under the FLSA, the Second Circuit utilizes the economic realities test, which focuses on "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-105 (2d Cir. 2013) (citation omitted); *see also Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016) (applying factors in FMLA context). In addition, the analysis depends on whether the defendant had "operational control" over employees. *Irizarry*, 722 F.3d at 110. Operational control does not necessarily require direct contact with employees and workplaces,

6

but essentially that the employer exercises control over and makes decisions that "directly affect the nature or conditions of the employees' employment." *Id.*

Here, the Complaint sufficiently alleges that all Defendants are covered employers under the FLSA. Andrade alleges that the Corporate Defendants owned and operated the restaurant in which he worked and that Defendant Quirke owned both of these entities throughout Plaintiff's employment. *See* Compl. ¶¶ 5-12. Additionally, Plaintiff alleges that Quirke as an officer of both Corporate Defendants "exercised operational control, … controlled significant business functions …, determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of [the Corporate Defendants] … devising, directing, implementing, and supervising the wage and hour practices and policies relating to the employees." *Id.* at ¶¶ 11-12. Moreover, Quirke in his capacity as employer actually responded to Andrade's specific inquiry as to why he was not receiving overtime, effectively denying his request. *See* Decl. ¶ 22. Applying the economic realities test, this is sufficient to allege that Quirke is himself also an employer under the FLSA. *See Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (quoting *Donovan v. Agnew*, 712 F.2d 1509 at 1511 (1st Cir. 1983)) ("'The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'").

Once a defendant is classified as an employer, the Court must then determine whether the party is engaged in interstate commerce sufficient to apply the FLSA. Specifically, an employer is liable for wage violations under the FLSA "if it hires an employee who either: 1) is engaged in commerce or in the production of goods for commerce or 2) is employed by an enterprise engaged in interstate commerce or in the production of goods for interstate commerce." *See Valdez v. H &*

*S Rest. Operations, Inc.*, No. 14-CV-4701, 2016 WL 3079028, at *2 (E.D.N.Y. Mar. 29, 2016),

(Report and Recommendation), *adopted by*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016).   An

"enterprise engaged in interstate commerce" is an entity "whose annual gross volume of sales

made or business done is not less than $500,000" and has employees that engage in interstate

commerce.  29 U.S.C. § 203(s)(1); *Valdez*, 2016 WL 3079028, at *2.

Plaintiff alleges in the Complaint that the gross annual volume of sales made or business

done by Defendants was not less than $500,000, and that "Defendants are enterprises engaged in

commerce or in the production of goods for commerce."  Compl. ¶¶ 34-37.  Although Andrade

does not provide specific instances of interstate commerce, the Court can infer an interstate nexus

based upon the factual allegations that Defendants operated a restaurant and that Plaintiff handled

food presumably prepared at that restaurant, the ingredients of which logically originated, at least

in part, outside of New York State.  *See Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-cv-

3314, 2015 WL 5561033, at *4 (E.D.N.Y. Sept. 1, 2015), (Report and Recommendation)*, adopted

by*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015) (inferring interstate commerce where defendants

were engaged in the food supply industry); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 86

(E.D.N.Y. 2012) (citing to *Huerta v. Victoria Bakery*, 10 CV 4754, 2012 WL 1107655, at *2

(E.D.N.Y. Mar. 30, 2012)) (finding, in the context of a default judgement, employer status and

applicability of  FLSA based upon the pleadings describing the business as a restaurant involving

food preparation).

Accordingly, the Court recommends that all Defendants be deemed employers subject to

the FLSA, such that they can be held jointly and severally liable for any violation of the FLSA's

overtime requirements.

2.  <u>Liability</u>

The Court now turns to the substance of the federal overtime claim.  The FLSA provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged
> in commerce or in the production of goods for commerce, or is employed in an
> enterprise engaged in commerce or in the production of goods for commerce, for a
> workweek longer than forty hours unless such employee receives compensation for
> his employment in excess of the hours above specified at a rate not less than one
> and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Here, Andrade's Complaint establishes an ongoing overtime violation starting from

January 1, 2010 through to the end of his employment, May 12, 2015. Compl. ¶¶ 19-32.  During

this timeframe, Plaintiff worked at least 72 hours per week each and every week.  *Id.;* Decl. ¶¶ 8,

9.  For the hours in excess of 40, he was only paid "straight time pay," and not the statutorily

mandated 150% overtime premium.  *Id.* at 18.  Additionally, Plaintiff did not take any vacation or

have "any other leave of absence that required [him] to miss work."  *Id.* at ¶ 23.  As such, Plaintiff

pleads a violation of the FLSA's overtime provision.  *See Rodriguez v. Almighty Cleaning, Inc.*,

784 F. Supp. 2d 114, 122 (E.D.N.Y. 2011) ("Because the Complaint alleges that Plaintiffs worked

more than 40 hours a week and were not paid time-and-a-half for their overtime hours, Plaintiffs

have sufficiently pleaded a violation of 29 U.S.C. § 207.").

Accordingly, based on the allegations in the Complaint, the Court recommends that

Defendants be found liable for failure to pay overtime in violation of the FLSA.

**B.      <u>Overtime Claim Under New York Labor Law</u>**

Andrade also asserts that Defendants violated the NYLL's overtime provisions for the

same period of employment, January 1, 2010 through May 12, 2015.  *See* Decl. ¶¶ 30-31.  Applying

9

the standards below, the Court recommends that Defendants be found liable for violating the overtime provisions of the NYLL.

Consistent with the FLSA, the NYLL regulations state that: "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate . . . ." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; *see Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) (noting that the NYLL is the "state analogue to the federal FLSA."). In fact, the NYLL "mirrors the FLSA in compensation provisions regarding overtime wages." *Valdez*, 2016 WL 3079028, at *3; *see D'Arpa*, 2013 WL 3010810, at *18 ("[The NYLL] otherwise echoes the FLSA in compensation provisions regarding overtime and minimum wage requirements.").

Accordingly, courts in this Circuit routinely impose liability for an overtime violation of the NYLL if it has already found liability under the FLSA. *See Jemine v. Dennis*, 901 F. Supp. 2d 365, 375 (E.D.N.Y. 2012) ("Applying the same reasoning used in the FLSA analysis to the state claims, this Court finds that the undisputed allegations in the complaint and default submissions are sufficient to impose liability on defendants under the NYLL overtime . . . provision[].").  As all Defendants are considered employers under the FLSA, they are similarly employers under the NYLL. *See Garcia v. La Revise Associates LLC*, No. 08 CIV 9356, 2011 WL 135009, at *5 (S.D.N.Y. Jan. 13, 2011) ("New York's "employer" provisions are equally broad [as that of the FLSA].") (quoting *Spicer v. Pier Sixty LLC,* 269 F.R.D. 321, 335 n. 13 (S.D.N.Y. 2010)).

As a result, the Court further recommends a determination that not only are the Defendants subject to the NYLL, but that they have violated the statute's overtime requirements. As set forth above, Andrade establishes through his Complaint and Declaration that he worked at least 72 hours per week from January 1, 2010 through May 12, 2015 without taking any vacation or any other

prolonged absences.  Compl. ¶¶ 19-27; Decl. ¶¶ 14-18.    During this time period, Defendants compensated him only at the regular hourly rate without any premium compensation for those hours worked in excess of his first 40 hours per week.  *Id.*  Accordingly, Plaintiff sufficiently substantiates a violation of the NYLL's overtime provision so as to hold Defendants liable for this claim.

### C.        Spread of Hours and Minimum Wage Liability

In light of the Second Circuit's skepticism and general disfavor toward default judgments, the Court respectfully recommends that Plaintiff's demands for minimum wage and spread of hours damages, first raised in the instant motion, be denied at this time.  *Cf. Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95–96 (2d Cir.1993) ("…[A]n understandable zeal for a tidy, reduced calendar of cases should not overcome a court's duty to do justice in the particular case.")

As noted above, under Federal Rule of Civil Procedure 55(a) "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," the defaulting defendant is deemed to admit every *well-pleaded allegation in the complaint*.  *See Greyhound Exhibitgroup, Inc., v. E.L .U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992), *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1049 (1993); *Montcalm Pub. Corp. v. Ryan,* 807 F.Supp. 975, 977 (S.D.N.Y.1992).   This presumption is predicated upon the complaint giving the opposing party notice as to what specific relief its adversary seeks and what provision of which law is being invoked.  *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 245–46 (2d Cir. 2004).   Accordingly, Plaintiff may not seek damages tied to causes of action not pled in the unanswered complaint by raising them for the first time as part of a motion for default judgement. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount,

what is demanded in the pleadings."); *Silge v. Merz*, 510 F.3d 157, 160 (2d Cir.2007) (declining to award pre-judgment interest where plaintiff failed to include a claim for such damages in the demand clause, and noting that "[b]y operation of Rule 54(c), his failure to do so, intentional or not, ran the risk that his damages would be limited in the event of default."); *Trustees of Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund & 401(k) Sav. Plan v. Generation II Plumbing & Heating, Inc.*, No. 07CV5150, 2009 WL 3188303, at *2 (E.D.N.Y. Oct. 1, 2009) (declining to award delinquency charges associated with the unpaid dues as part of a default judgment because plaintiffs, in their complaint, demanded only delinquency charges on the unpaid *contributions*).

Plaintiff here seeks damages pursuant to the NYLL's spread of hours provision for shifts in which he worked in excess of ten hours and NYLL's minimum wage provisions for the period of his employment when he was compensated at a rate below the New York state minimum wage. *See* Mem. at 19.  Although particularized and substantiated in Plaintiff's moving memorandum and attached declaration, neither of these requests for relief are contained anywhere in the original complaint, which was never amended prior to the filing of the instant motion for default judgment. *Compare* Compl. *with* Mem. *with* Decl.

Accordingly, the Court respectfully recommends that default judgement be denied as to the spread of hours and minimum wage claims first articulated in the instant motion in light of the absence of these claims in Plaintiff's complaint.

**D.**    **Damages**

Having determined Defendants' liability, "[t]he court must also determine the amount of damages, actual or statutory, that may be assessed." *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010).  Here, Plaintiff seeks compensatory damages, liquidated damages, prejudgment interest, and leave to file a motion for attorneys' fees and costs.  *See* Compl.  ¶¶ 33-47.

1.  Statute of Limitations

Before calculating the damages due Andrade for the overtime violations discussed above, the Court must first determine the viability of his claims in light of the relevant statutes of limitations.  *Cortes v. Warb Corp.*, No. 14-CV-7562, 2016 WL 1266596, at *2 (E.D.N.Y. Mar. 15, 2016), (Report and Recommendation), *adopted by*, 2016 WL 1258484 (E.D.N.Y. Mar. 30, 2016). (A "determination of damages requires consideration of the applicable limitations under each statute.")

a.  FLSA

Under the FLSA, because Defendant's conduct was willful, a three-year statute of limitations applies.   The statute of limitations under the FLSA is normally two years, but extends to three years for willful violations.  29 U.S.C. § 255(a).  A violation is classified as willful if a plaintiff shows "that the employer either knowingly violated its obligations under the FLSA or showed reckless disregard for whether its conduct was prohibited by that statute."  *Chen v. JP Standard Constr. Corp.*, No. 14-CV-1086, 2016 WL 2909966, at *5 (E.D.N.Y. Mar. 18, 2016), (Report and Recommendation), *adopted by*, 2016 WL 2758272 (E.D.N.Y. May 12, 2016).

Defendants' willfulness is demonstrated in the compensation scheme in which they engaged, the only rational purpose of which was avoiding detection for violating applicable federal and state overtime laws.  Defendants paid Andrade by check for the first 35 hours he worked each week and then paid the remainder, including approximately 32 hours of overtime, through far less traceable cash, which Defendants also excluded from Plaintiff's time clocks and paystubs.  *See* Decl.¶ 13; *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 268 (E.D.N.Y. 2008) (finding reckless mental state under FLSA evidenced, in part, by employer's use of cash payments for plaintiff's salary in an attempt to thwart overtime requirements).  Accordingly, the Court determines that Defendant's conduct was willful and that the FLSA's three-year statute of limitations applies, covering his claims from July 17, 2012 through May 12, 2015.

### b.  *NYLL*

Plaintiff's overtime claims under the NYLL also fall within the applicable New York State statute of limitations period, which is six years regardless of the Defendants' intent or mental state. *See* N.Y. Lab. Law § 198(3).   Under the NYLL, Andrade seeks overtime compensation for the period of January 1, 2010 through May 12, 2015.  *See* Mem. at Sec. B(4);  Decl. Attach. Comp. of Dams.  As the action was commenced on July 17, 2015, Plaintiff's entire overtime claim is also covered by the NYLL.

### 2.  Compensatory Damages

### a.  *Plaintiff's Recollection of Wages and Hours Worked*

The Court credits Plaintiff's unopposed sworn declaration as to the amount of hours he worked and rates of pay he received.  *See generally* Decl.  Where, as here, a defendant fails to rebut a plaintiff's assertions of hours worked and the rate of pay, the Court credits the plaintiff's

recollection.  *See Perez v. Queens Boro Yang Cleaner, Inc.*, No. 14-CV-7310, 2016 WL 1359218, at *2 (E.D.N.Y. Mar. 17, 2016), (Report and Recommendation), *adopted sub nom.*, *Perez v. Yang Cleaners*, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016) ("When a defendant defaults in an action brought under the FLSA, the plaintiff's recollection and estimates of hours worked are presumed to be correct."); *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08CIV.6071, 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009), (Report and Recommendation), *adopted by*, 08CIV.6071, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009) ("In a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct.").  Accordingly, the Court relies on Plaintiff's recollection in calculating the amount of outstanding overtime compensation.

### b.  *Overtime Compensation Awarded under FLSA*

Andrade seeks unpaid overtime under the FLSA for the period of July 17, 2012 through May 12, 2015.  *See* Compl. ¶¶ 33-47; Decl. Attach. Comp. of Dams.  The FLSA requires overtime compensation "at a rate not less than one and one-half times the regular rate at which he is employed."  *See* 29 U.S.C. § 207(a)(1).  Overtime wages due are calculated by "multiplying the number of overtime hours worked in a week by the overtime rate, which is one half of the usual hourly rate."  *Pinzon v. Paul Lent Mech. Sys., Inc.*, No. CV 11-3384, 2012 WL 4174725, at *3 (E.D.N.Y. Aug. 21, 2012), (Report and Recommendation), *adopted by*, 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012).

From July 17, 2012 up to June 30, 2013, Andrade had an hourly rate of $7.50 and worked 32 hours of overtime per week, an average of five and one-third hours per day.  *See* Decl. ¶¶ 13, 15, 18, Attach. Comp. of Dams.  Andrade's proper overtime rate for this period of employment

15

was $11.25 for the 299 days he worked.  As Plaintiff was paid his regular hourly rate for all hours worked throughout his employment, he is owed $5,980.00 under the FLSA for this time period.

From July 1, 2013 through December 31, 2013, Andrade was paid an hourly rate of $8.00 and worked the same schedule, resulting in 32 hours of overtime per week, an average of five and one-third hours per day.  *See* Decl. ¶¶ 13, 16, 18, Comp. of Damages.  Andrade's proper overtime rate for this period of employment was $12.00 for the 158 days he worked.  As Plaintiff was paid his regular hourly rate for all hours worked, he is owed $3,370.67 under the FLSA in unpaid overtime for this time period.

From January 1, 2014 through May 12, 2015, Andrade was paid an hourly rate of $9.00 and worked 32 hours of overtime per week, again an average of five and one-third hours per day. *See* Decl.¶¶13, 17, 18, Attach. Comp. of Dams. Andrade's proper overtime rate for this period was $13.50 for the 429 days that he worked.  As Plaintiff was paid his regular hourly rate for all hours worked, he is owed $10,296.00 for this time period under the FLSA.

In total, under the FLSA, Andrade is due $19,646.67 in unpaid overtime wages.

### c.   *Overtime Compensation Awarded under NYLL*

As set forth above, overtime compensation under the NYLL is calculated in the same manner as under the FLSA.  *See Peralta v. M & O Iron Works, Inc.*, No. 12-CV-3179, 2014 WL 988835, at *7 (E.D.N.Y. Mar. 12, 2014) ("The NYLL overtime compensation scheme is identical to the FLSA requirements in that it obligates employers to pay employees a fifty[]percent premium for each of their overtime hours.").  Nevertheless, a plaintiff may not recover compensatory damages under both the FLSA and NYLL for the same exact time period.  *See Jin M. Cao v. Wi Liang Lexington Rest., Inc.*, No. 08 Civ. 3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010)

("Although plaintiffs are entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the Labor Law, they may not recover twice."); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 49 n.15 (E.D.N.Y. 2015) ("Plaintiffs may not recover for unpaid wages under both statutes . . . ."). Here, Plaintiff seeks additional overtime damages under the NYLL for the period of Andrade's employment running from January 1, 2010 through July 16, 2012, which otherwise would be time-barred by the FLSA's statute of limitations.  *See* Decl. Attach. Comp. of Dams.

From January 1, 2010 through December 31, 2011, Andrade was paid at an hourly rate of $5.00 and worked 32 hours of overtime per week, an average of five and one-third hours per day. *See* Decl. ¶¶ 13, 17, 18, Attach. Comp. of Dams.  The New York State minimum wage for this same period of time was $7.25 per hour.  *See Gurung v. Malhotra*, 851 F. Supp. 2d 583, 592 (S.D.N.Y. 2012) (noting that New York State minimum wage was raised to $7.25 per hour as of July 24, 2009).   Because the statutory rate is greater than the actual rate of pay, the statutory rate is used to calculate the amount of overtime owed.  *See, e.g., Fermin*, 93 F. Supp.3d at 44-45, 49-52 (calculating compensatory damages for unpaid overtime based upon 150% of the New York State minimum wage).  During this time period, plaintiff worked 627 days, amounting to 3,344 hours of overtime, for which Defendants paid Andrade $5.00 per hour.  The proper overtime rate based upon the statutory minimum wage was $10.88 per hour, making Plaintiff's correct compensation for this time period $36,208.64.  Andrade has already received $16,640.00 for these overtime hours because he was paid at his regular rate for all hours worked.  *See* Decl. ¶¶ 13, 17, 18, Attach. Comp. of Dams.  Accordingly, the overtime damages owed for this time period would be the difference, $19,662.72.  *See Cortez v. 8612 Best Coffee Shop Inc.,* No. 13CV3095, 2015

WL 10709830, at *5 (E.D.N.Y. Aug. 14, 2015) (Report and Recommendation) *adopted by*, No. 13-CV-3095, 2016 WL 1559148 (E.D.N.Y. Apr. 18, 2016) (awarding FLSA overtime compensation utilizing statutory minimum wage rate to calculate lawful overtime rate and comparing that amount to what was actually paid).

From January 1, 2012 through July 17, 2012, the Plaintiff worked 171 days at an hourly rate of $7.50 per hour and worked an average of five and one-third hours of overtime per day.  The lawful overtime rate for these hours was $11.25.  Applying the formula above, the comparison of Andrade's actual compensation, $6,840.00, to what is owed according to the NYLL overtime rate, $10,260.00, establishes an underpayment of $3,420.00.

Therefore, under the NYLL, Plaintiff is owed an additional award of $23,082.72 in compensatory damages for the earlier period of employment not covered by the FLSA.

Accordingly, the Court respectfully recommends that Plaintiff be awarded a total of $42,729.39 in unpaid overtime compensation under both the FLSA and NYLL.

### 3. Liquidated Damages

In addition to compensatory damages for unpaid overtime, the Court also respectfully recommends that Andrade be awarded liquidated damages under both the FLSA and NYLL in accordance with the applicable statutes of limitations in the amount of $33,368.43.

### a. FLSA

Under the FLSA, liquidated damages are awardable in an amount equal to the unpaid overtime compensation "unless the employer can show that it acted in good faith."  *Valdez*, 2016 WL 3079028, at *6 (quoting 29 U.S.C. § 216(b)).  To establish good faith, the employer must show that it "had reasonable grounds for believing that it was not a violation of the FLSA . . . ."

*Ahmed v. Subzi Mandi, Inc.*, No. 13-CV-3353, 2014 WL 4101224, at \*6 (E.D.N.Y. May 27, 2014), (Report and Recommendation), *adopted by*, 13-CV-3353, 2014 WL 4101247 (E.D.N.Y. Aug. 18, 2014) (alteration omitted).  Here, the Court finds that Defendants' default alone is sufficient to demonstrate a lack of good faith.  *See Valdez*, 2016 WL 3079028, at \*6 ("As the defendants here have defaulted, they have not shown they acted in good faith.").  Nevertheless, Andrade also alleges facts suggesting that Defendants recklessly or knowingly violated the applicable federal and state overtime requirements.  *See supra* at 13-15; *cf. Reich v. Waldbaum, Inc.*, 52 F.3d 35, 41 (2d Cir. 1995) (basing a finding of willfulness partially upon the incredible nature of defendant's alleged belief that the plaintiffs were exempt under the FLSA).  By paying Andrade in cash once he approached the forty-hours-per-week threshold and not reflecting additional hours worked in his paychecks or paystubs, Defendants confirm the Court's finding that they acted in bad faith, and Andrade is therefore entitled to double damages.  In calculating the liquidated damages, Andrade is entitled to 100% of his FLSA overtime wages due for the period of July 17, 2012 through May 12, 2015, which amounts to $19,646.67.  *See supra* 17-18 (calculating the total uncompensated overtime claimed under the FLSA).

   *b.  NYLL*

   Preliminarily, because Plaintiff has substantiated the willfulness of Defendant's disregard for the applicable overtime requirements, Andrade is entitled to recover liquidated damages under the NYLL for the entire time period of his claim not already awarded under the FLSA.  Prior to November 24, 2009, "an employee could only receive liquidated damages under the NYLL if his employer's failure to pay him was willful." *Cardoza*, 2015 WL 5561033, at \*12.  The NYLL's willfulness standard is treated the same as the willfulness standard under the FLSA's statute of

limitations analysis.  *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) ("The district court reasonably concluded, and the parties do not contest, that the NYLL's willfulness standard does not appreciably differ from the FLSA's willfulness standard.") (quotation omitted). Effective November 24, 2009, liquidated damages are awardable under the NYLL "unless the employer proves a good faith basis to believe that its underpayment was in compliance with the law . . . ."  N.Y. Lab. Law § 663(2).  As set forth above, Plaintiff establishes that Defendants' actions were willful, and Defendants failed to meet their burden of proving a good faith basis for not paying overtime wages.  *See supra* at 13-15, 20-21.  Accordingly, the Court respectfully recommends that Andrade be awarded additional liquidated damages under the NYLL for Defendants' overtime violations from January 1, 2010 through July 16, 2012 as well

However, the calculation of these additional damages will vary depending upon the timeframe of the violations.  For claims that "occurred on or before April 8, 2011, NYLL liquidated damages [are] equal to twenty-five percent of the total amount of wages to be found due." *Cardoza*, 2015 WL 5561033, at *13 (quotation omitted).  "For all NYLL claims that occurred on or after April 9, 2011, the employer is liable for liquidated damages equal to one hundred percent of the total amount of wages found to be due."  *Id.* (citing N.Y. Lab. Law. § 663(1)).  For the period of January 1, 2010 through April 8, 2011, Plaintiff worked 398 days for a total of 2,122 ⅔ hours of overtime.  The lawful minimum wage overtime rate was $10.88 per overtime hour, and Defendants only paid Plaintiff at a rate of $5.00 per hour during this same time period.  *See supra* at 18-19.  Therefore, the unpaid overtime wages for this period would be $12,481.28.  Accordingly, the liquidated damages owed to Plaintiff is 25% of this amount or $3,120.32.

From April 9, 2011 through December 31, 2011, Plaintiff worked 229 days, totaling 1,221 ⅓ hours of underpaid overtime.  The lawful overtime rate was $10.88 per overtime hour, and Defendants only paid Plaintiff at a rate of $5.00 per hour during this same time period, resulting in an underpayment of $5.88 per hour, for a total of $7,181.44.  *See supra* at 18-19.  As calculated above, for January 1, 2012 through July 17, 2012, Plaintiffs owe the Defendant $3,420.00 in unpaid overtime.  *See supra* at 19.  Under the NYLL, as liquidated damages for this time period are calculated at a rate of 100% of unpaid overtime, the corresponding award is $10,601.44.

Accordingly, the Court respectfully recommends awarding Plaintiff $13,721.76 in liquidated damages under the NYLL for the overtime violations that transpired from January 1, 2010 through July 17, 2012, for a total liquidated award under both statutes of $33,368.43.

In reviewing this conclusion, the Court recognizes that other courts in the past have awarded liquidated damages under both the FLSA and NYLL for a single amount of unpaid overtime, in effect awarding three calculations of damages.  Specifically, prior to the 2011 Amendment to the NYLL increasing liquidated damages from 25% to 100% of total unpaid wages, courts "awarded cumulative liquidated damages under both the FLSA and NYLL because the statutes' liquidated damages provisions serve[d] different purposes."  *Hengjin Sun*, 2016 WL 1587242, at *3; *see also Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635, 2011 WL 2022644, at *7 (S.D.N.Y. May 2, 2011) (Report and Recommendation), *adopted by* 2011 WL 2038973 (S.D.N.Y. May 24, 2011) (observing that "[a]uthority is mixed regarding whether a plaintiff may recover liquidated damages under both federal and state law").  However, "the New York Legislature's 2009 and 2011 reforms have spawned 'an emerging trend towards denying a cumulative recovery of damages' under the FLSA and NYLL."  *Hengjin Sun*, 2016 WL 1587242, at *4 (quoting

21

*Santana v. Brown*, No. 14 Civ. 4279, 2015 WL 4865311, at *5 (S.D.N.Y. Aug. 12, 2015)).

Accordingly, courts have more recently observed that "'[b]ecause both forms of liquidated damages serve the same purpose and have the same practical effect of deterring wage violations and compensating underpaid workers,' NYLL's recent amendments 'have undermined the basis,' such as it was, for distinguishing between FLSA's and NYLL's liquidated damages provisions." *Hengjin Sun*, 2016 WL 1587242, at *4 (quoting *Chen v. New Fresco Tortillas Taco LLC*, No. 15 Civ. 2158, 2015 WL 5710320, at *7 (S.D.N.Y. Sept. 25, 2015)).

Applying the more recent trend in the case law, although the Plaintiff's claims related to the overtime violations from July 17, 2012 through May 12, 2015 are viable under both the FLSA and NYLL, the Court recommends that Plaintiff be awarded only one set of liquidated damages under the FLSA for this time period.[1]

### 4.  Prejudgment Interest

Plaintiff also seeks prejudgment interest under the NYLL.  Although it is "well settled" that prejudgment interest is not awardable under the FLSA, *Begum v. Ariba Disc., Inc.*, 12-CV-6620, 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015), "the NYLL permits the award of both liquidated damages and pre-judgment interest."  *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 38 (E.D.N.Y. 2015).  Under the New York Civil Practice Law and Rules ("CPLR"), "[i]nterest shall be at the rate of nine per centum per annum."  N.Y. C.P.L.R. § 5004.  Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . . from a single

---

[1] The Court recognizes that this conclusion is contrary to its Reports and Recommendations in *Escobar v. Del Monaco Bros. Indus. Inc.,* 14-CV-3091 at 26-27 (E.D.N.Y. Jul. 27, 2016) (Report & Recommendation), adopted by, 2016 WL 4275705 (E.D.N.Y. Aug. 13, 2016) and *Euceda v. Preesha Operating Corp.*, 14-CV-3143 at 18-20 (E.D.N.Y. July 13, 2016) (Report & Recommendation), adopted by 14-CV-3143 (E.D.N.Y. Sept 30, 2016).  Upon reconsideration of Court's earlier orders, the Court concludes that separate awards of liquidated damages under each statute is inappropriate.

reasonable intermediate date." N.Y.C.P.L.R. § 5001(b); *Coulibaly v. Millennium Super Car Wash, Inc.*, No. 12-CV-04760, 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013). A common date is "[t]he median date between the earliest ascertainable date the cause of action existed and the date the action was filed . . . ." *Gunawan*, 897 F. Supp. 2d at 93. Courts have discretion in choosing a reasonable date from which to calculate pre-judgment interest. *See Fermin*, 93 F. Supp.3d at 49 ("Courts applying N.Y. CPLR § 5001 have wide discretion in determining a reasonable date from which to award pre-judgment interest . . . .") (quotation omitted).

Here, the relevant period of employment for Plaintiff's overtime claims under the NYLL is January 1, 2010 through May 12, 2015. This action was filed July 17, 2015. The mid-point between January 1, 2010 and July 17, 2015 is approximately October 8, 2012. The compensatory damages for unpaid overtime wages due under the NYLL for that time period is $42,729.39. *See supra* at 17-19. [2] The Court calculates pre-judgment interest on this amount at a rate of 9% per year to be $15,746.76.[3] As the unpaid overtime wages remain outstanding, daily interest shall continue to accrue at the rate of $10.54 per day for each day until judgment is entered.

Accordingly, the Court recommends that pre-judgment interest amounting to $15,746.76 be awarded to Plaintiff, with interest accruing at a daily rate of $10.54 until judgment is entered.

---

[2] This total includes the amount the Court recommended be awarded under the FLSA because the equivalent compensatory award is available under the NYLL for the same time period. *See Santillan*, 822 F. Supp. 2d at 298 (holding that prejudgment interest and liquidated damages under NYLL may be awarded in a matter also substantiating violations of the FLSA for an overlapping time period).

[3] This figure was reached by taking the number of days between the mid-point selected, October 8, 2012, and the date of this Order, November 10, 2016 (1,494 days) and multiplying it by the daily interest rate of $10.54 ($42,729.39 [principal loan amount] x 0.09 [yearly interest] = $3,845.64 (yearly interest) / 365 days = $10.54 per day interest).

5.   <u>Attorneys' Fees and Costs</u>

Finally, Andrade requests leave to move for attorneys' fees and costs "if it is determined by the Court that the Plaintiff is entitled to damages."  *See* Compl. at 7; Mem. at 19.  As the Court has determined that Plaintiff is entitled to damages, it is respectfully recommended that Andrade be granted leave to submit a motion for attorneys' fees and costs under the FLSA and NYLL.  *See* 29 U.S.C. § 216(b) ("The court in such [FLSA] action shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); N.Y. Lab. Law § 198(1-a) ("In any [NYLL] action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover . . . all reasonable attorney's fees . . . ."); *Zhen Ming Chen v. New Fresco Tortillas Taco LLC*, 15-cv-2158, 2015 WL 5710320, at *10 (S.D.N.Y. Sept. 25, 2015) ("Under the FLSA and NYLL, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs.").

**IV.   <u>Conclusion</u>**

For the reasons set forth above, the Court respectfully recommends that Plaintiff's motion for default judgment be granted as to the overtime claims and denied with respect to those claims related to failure to pay spread of hours compensation and a minimum wage, neither of which were contained in the complaint.  Further, the Court recommends that Andrade be awarded damages totaling $91,844.58, comprised of: (i) $42,729.39 in compensatory damages; (ii) $33,368.43 in liquidated damages; and (iii) $15,746.76 in pre-judgment interest, with interest accruing at a daily rate of $10.54 until judgment is entered.  Finally, the Court recommends that Plaintiff be granted leave to move for attorneys' fees and costs.

## V.    <u>Objections</u>

A copy of this Report and Recommendation is being served on Plaintiff by electronic filing on the date below.  Plaintiff is directed to serve a copy on Defendants and promptly file proof of service by ECF.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal to the District Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996)


Dated: Central Islip, New York
       November 10, 2016


                                        <u>s/ Steven I. Locke</u>
                                        STEVEN I. LOCKE
                                        United States Magistrate Judge

25